UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00067-FDW
(3:17-cr-00066-FDW-DSC-1)

| | |
|---|---|
| FLORENCIO APREZA-GUERRERO, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. )<br>_____ ) | ORDER |

**THIS MATTER** is before the Court on initial review of Petitioner's Pro Se Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

**I.  BACKGROUND**

On March 6, 2017, Petitioner Florencio Apreza-Guerrero ("Petitioner") was charged in a Bill of Information with one count of cocaine trafficking conspiracy in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(C) (Count One) and one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) (Count Two). [CR Doc. 1: Bill of Information]. The conspiracy involved the trafficking and distribution of multiple kilograms of cocaine by Petitioner and his co-conspirators in Charlotte, North Carolina, in 2016. [CR Doc. 14 at ¶ 14: Presentence Investigation Report].

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:20-cv-00067-FDW, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:17-cr-00066-FDW-DSC.

The parties reached a plea agreement pursuant to which Petitioner agreed to plead guilty to Counts One and Two and the Government agreed to recommend that the sentences for both Counts, which each carried statutory maximum terms of imprisonment of twenty (20) years, run concurrently. [CR Doc. 3 at 1-2]. The parties also agreed, pursuant to Rule 11(c)(1)(B), to jointly recommend that the Court make the following findings and conclusions as to the U.S. Sentencing Guidelines:

> a.  The amount of cocaine that was known to or reasonably foreseeable by the Defendant was in excess of five (5) kilograms but less than one hundred and fifty (150) kilograms. The parties reserve their right to advocate whether the base offense level should be 30, 32, or 34.
>
> b.  The Defendant should receive a role enhancement. The parties reserve their right to advocate whether it should be 2, 3, or 4 levels.
>
> c.  The offense level is increased by 2 levels for money laundering, pursuant to U.S.S.G. § 2S1.1(b)(2)(B).

[Id. at 2]. The plea agreement also provided that "either party may argue their respective positions regarding other specific offense characteristics, cross-references, special instruction, reductions, enhancements, and adjustments, as well as departures from the 'applicable guideline range' (U.S.S.G. § 5C1.1)." [Id. at 4].

In the plea agreement, Petitioner stipulated that there was a factual basis for his guilty plea. He also stipulated that he had read and understood the factual basis that was attached to his plea agreement and that the Court and the United States Probation office may use it, without objection by Petitioner, to determine the applicable advisory guideline range or the appropriate sentence under 18 U.S.C. § 3553(a), "unless the Factual Basis itself notes that the Defendant's right to object to a particular fact(s) was explicitly reserved." [CR Doc. 3 at ¶ 16]. Petitioner agreed to waive

the right to contest his conviction and sentence on direct appeal or in any post-conviction proceeding, except as to claims of ineffective assistance or prosecutorial misconduct. [Id. at ¶ 21].

At the plea hearing, Petitioner affirmed that he was, in fact, guilty of the charges to which he was pleading guilty. [CR Doc. 26 at 9]. Petitioner also testified that he had spoken with his attorney about how the U.S. Sentencing Guidelines might apply to Petitioner's case and that he understood that the district judge would not be able to determine the applicable guideline range until after Petitioner's presentence report was prepared and Petitioner had had an opportunity to comment on it. [CR Doc. 26 at 7]. The terms of the plea agreement were reviewed, including that the amount of cocaine reasonably foreseeable to Petitioner was greater than five kilograms but less than 150 kilograms and that the parties reserved their right to argue whether the base offense level should be 30, 32, or 34. [Id. at 11]. Petitioner also affirmed having read the factual basis and his understanding that it may be used to determine the guideline range or appropriate sentence. [Id. at 13]. Finally, Petitioner testified that he was satisfied with the services of his attorney and that Petitioner was "very grateful to him for everything he's done for [Petitioner]." [Id. at 14].

Petitioner was sentenced on July 31, 2017. Before the sentencing hearing, a probation officer prepared a Presentence Investigation Report ("PSR"). [CR Doc. 14: PSR]. In the PSR, the probation officer recommended, in significant part, a base offense level of 34 based on a drug quantity of 86 kilograms [Id. at ¶ 52] and a two-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1) on Count One based on the possession of firearms in furtherance of the drug trafficking conspiracy [Id. at ¶ 53]. The probation officer also recommended a two-level enhancement based on the maintenances of premises for the purpose of manufacturing or distributing a controlled substance under U.S.S.G. § 2D1.1(b)(12) and a four-level leadership role

3

enhancement under U.S.S.G. § 3B1.1(a). [Id. at ¶¶ 54, 46]. The recommended adjusted offense level for Count One was 42. [Id. at ¶ 58].

As for Count Two, with a base offense level of 34 based on the drug quantity, a two-level firearm enhancement, and a two-level maintenance of premises enhancement, the total base offense level was 38. [Doc. 14 at ¶¶ 59]. With a four-level enhancement for Petitioner's role in the offense and a two-level enhancement based on specific offense characteristics, the adjusted offense level for County Two was 44, which was the greater of the two offense levels. [Id. at 60, 62, 64, 65]. After a three-level reduction for acceptance of responsibility, the Total Offense Level (TOL) was 41. [Id. at ¶¶ 67-69]. With a criminal history category of I, the applicable guideline range of imprisonment was a term of 324 to 405 months. [Id. at ¶¶ 74, 92]. The statutory maximum term of imprisonment on each count was 20 years, 21 U.S.C. §§ 841(b)(1)(C), 846 and 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(h). [Id. at ¶ 91].

Counsel for Petitioner filed objections to the PSR. [CR Doc. 11: Objections to the Presentence Report]. Among other things, Petitioner objected to the drug quantity, the firearm enhancement, the enhancement for maintaining premises for the purpose of manufacturing or distributing drugs, and the resultant offense levels. [Id. at ¶¶ 3, 5-7, 9]. As to the drug quantity, Petitioner argued that the base level amount of 86 kilograms resulted from double counting 29 grams as more fully explained in the Objection. [Id. at ¶ 5(a)]. Although Petitioner did not proffer an alternative drug quantity, it appears that a base level amount of 57 kilograms comports with Petitioner's argument. [See id.]. As to the objection to the two-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1), Petitioner argued that he was not alleged to have personally possessed a firearm and that the firearms possessed by the co-defendants were not foreseeable to Petitioner. [Id. at ¶ 6]. As to the enhancement for maintaining a premises for the distribution of controlled

4

substances, Petitioner argued that the primary use of the premises was as a residence and that the distribution of drugs "was an incidental or collateral use for his premises." [Id. at 7]. Petitioner's counsel filed a Sentencing Memorandum in support of these objections. [CR Doc. 16: Sentencing Memorandum].

At Petitioner's sentencing hearing, the attorney for the Government advised the Court that the objections to the PSR had been resolved. [CR Doc. 27 at 2: Sentencing Tr.]. The Government specifically noted its agreement not to pursue the enhancement for maintaining premises for drug distribution. [Id. at 7]. Additionally, the Government stated that the parties agreed that Petitioner should be subject to a three-level enhancement, rather than four, for his role in the conspiracy. [Id. at 7-8]. These changes yielded a TOL of 38, which resulted in a guideline range of 235 to 293 months instead of 324 to 405. [Id. at 8, 10]. The Court then noted that the statutory maximum sentence was 480 months because each count carried a statutory maximum of 20 years. [Id. at 8-9]. After hearing Petitioner's counsel's extensive presentation in support of a downward variance [Id. at 12-24] and discussing the sentencing factors under 18 U.S.C. § 3553(a) [Id. at 30-33], the Court imposed a sentence of a term of imprisonment of 235 months on each count, to be served concurrently [Id. at 34]. Petitioner was also sentenced to terms of supervised release of five years on Count One and three years on Count Two, to run concurrently. [CR Doc. 18 at 3: Judgment]. On August 16, 2017, judgment was entered on Petitioner's conviction. [Id.].

Petitioner appealed his sentence to the United States Court of Appeals for the Fourth Circuit. On appeal, the Government moved unopposed to remand the case to the District Court because Petitioner should have been sentenced to a three-, not five-, year term of supervised release. [CR Doc. 28]. The Fourth Circuit granted the motion and remanded the case with instructions to amend the judgment to reflect the appropriate term of supervised release. [Id.]. On

5

Case 3:17-cr-00066-FDW-DSC   Document 41   Filed 05/08/20   Page 5 of 16

December 4, 2018, this Court entered an Amended Judgment in accordance with the Fourth Circuit's Order. [CR Doc. 31: Amended Judgment]. Petitioner again appealed his sentence. [CR Doc. 32]. He argued that his sentence is substantively unreasonable because it created an unwarranted sentencing disparity with a co-conspirator. [CR Doc. 38 at 1 (citing 18 U.S.C. § 3553(a)(6))]. Citing Petitioner's knowing and voluntary waiver of his appeal rights, the Fourth Circuit dismissed Petitioner's appeal. [CR Doc. 38].

Petitioner timely filed the present motion to vacate on February 3, 2020, in which he argues that his counsel was ineffective for three reasons: (1) Petitioner's counsel withdrew Petitioner's objections in the factual basis and PSR regarding the double counting of the total amount of weight involved in the conspiracy without Petitioner's permission and knowledge; (2) Petitioner's counsel withdrew Petitioner's objection in the factual basis and PSR regarding the dangerous weapons enhancement without Petitioner's permissions and knowledge; and (3) Petitioner's counsel "did not argue during the sentencing proceedings about the National as well as the sentencing disparity of [Petitioner's] codefendants, after [counsel] filed a sentencing Memorandum saying he would argue on [Petitioner's] behalf." [CV Doc. 1 at 4-7].

## II.    STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating claims under § 2255, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "[C]ourts must be able to rely on the defendant's statements made under oath during a

properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 216, 221-22 (4th Cir. 2005). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (quoting Strickland, 466 U.S. at 694). If the petitioner fails to meet this burden, the "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Here, Petitioner claims three grounds for his claim of ineffective assistance of counsel related to his sentencing. The Court addresses them in turn.

### A. Drug Quantity

Petitioner contends that only minutes before Petitioner was due in court for sentencing his attorney met with the Assistant United States Attorney and withdrew Petitioner's objections to the drug quantity, which Petitioner contends was "over[-]represented and doubled counted." [CV Doc. 1-1 at 6]. Petitioner claims that his attorney withdrew the objection without Petitioner's "express permission and knowledge." [Id.]. Further, Petitioner argues that the outcome would have been different if his attorney had argued the drug quantity issue to the sentencing court. [Id.]. As to the drug quantity, Petitioner contends:

> It is undisputed by the evidence of the case that [Petitioner] and his codefendant's [*sic*] received fifteen Kilo=grams of Cocaine per month, and that this conspiracy lasted three months. So the total amount of Cocaine that is reasonably foreseeable is forty five kilograms. However, the government added twenty nine kilograms, that was recovered from a co-defendant's house to the forty five kilograms, and this pushed the amount of Cocaine over the threshold to 50 to 150 Kilograms, and this gave [Petitioner], a two level enhancement to a base offense level of (36) thirty six, as the record shows the government double counted the total amount of Cocaine, had [Petitioner's] counsel argued as he was supposed to do this court would of seen this and sentenced [Petitioner], according to this evidence.

[CV Doc. 1-1 at 7 (grammatical errors uncorrected)].

The argument and testimony presented at Petitioner's sentencing hearing undermine Petitioner's argument. First, it appears some agreement was reached whereby the Government agreed to forego pursuit of the two-level enhancement for maintenance of premises and to recommended only a three-level increase for Petitioner's leadership role in the conspiracy. These concessions were likely exchanged for an agreement to withdraw objections to the firearm enhancement and the drug quantity. If anything, Petitioner's counsel achieved a reduction of three offense levels in Petitioner's TOL for sentencing, from 41 to 38.

9

Even assuming, for the sake of argument, that Petitioner's attorney did agree to forego objections to certain PSR recommendations, Petitioner was present at sentencing. After Petitioner affirmed that he was guilty of the two felonies for which he was being sentenced, Petitioner testified that he had received a copy of the PSR and that he understood it. [CR Doc. 27 at 5, 6]. Petitioner listened as the attorney for the Government advise the Court about the parties' agreement for the Government to forego the enhancement for maintaining premises for drug distribution and for the Government to recommend a three- rather than four-level enhancement for Petitioner's role in the conspiracy. Petitioner was present when counsel for the Government enumerated how these changes to the PSR would affect the TOL and the guideline range. [Id. at 7-8]. Thereafter, the Court asked Petitioner if he wanted an opportunity to speak to the Court. Petitioner declined and simply communicated, through his attorney, that he wanted "to say sorry for what he did." [Id. at 24]. As such, if Petitioner's attorney had, in fact, withdrawn certain objections without Petitioner's permission, Petitioner declined to alert the Court to this fact at sentencing when he had the opportunity to do so.

Furthermore, Petitioner's claim that the evidence is undisputed that Petitioner and his coconspirators received 15 kilograms of cocaine a month for a period of three months, for a total of 45 kilograms, is not true. There was substantial evidence presented to the Court that at least 57 grams of cocaine was reasonably foreseeable to Petitioner. [CR Doc. 14 at 12]. It does appear, as Petitioner argues, that 29 grams may have been double counted and that the total drug quantity for the purpose of determining Petitioner's base offense level should have been 57 kilograms of cocaine, not 86 kilograms. [See id.]. This difference, however, would not have affected Petitioner's sentence. Either way, under U.S.S.G. § 2D1.1, Petitioner would have been subject to a base offense level of 34.

Accordingly, Petitioner has failed to demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error. Royal, 188 F.3d at 249 (quoting Strickland, 466 U.S. at 694). Plaintiff's claim for relief on this ground will be denied.

### B. Firearm Enhancement

Petitioner also argues that his counsel was ineffective for withdrawing Petitioner's objection to the two-level firearm enhancement without Petitioner's permission just minutes before the sentencing proceeding. [CR Doc. 1-1 at 8]. On this issue, Petitioner argues:

> [Petitioner's] codefendant Pedro Valle, made a statement that [Petitioner] did not know that co-defendant Pedro Valle, had in his possession any firearms, therefore it was not reasonably foreseeable that [Petitioner] knew his codefendant Pedro Valle, had any firearms in his possession. When [Petitioner's] counsel failed to argue this issue before the District Court this prejudiced [Petitioner], and violated his Sixth Amendment right to effective assistance of counsel, due to the fact that counsel would of argued on [Petitioner's] behalf, he would of not received the two point enhancement for possession of a dangerous weapon during the drug trafficking conspiracy.

[CV Doc. 1-1 at 8].

Petitioner's argument is without merit. Even if it is true that Petitioner's counsel withdrew the objection to the firearm enhancement without Petitioner's permission, the enhancement was supported by the evidence. Petitioner's counsel objected to the enhancement in the PSR, arguing that "using the 'reasonable foreseeability' test under U.S.S.G. § 1B1.1, and in cases analyzing and applying this test to U.S.S.G. § 2D1.1(b), the firearms possessed by any of the co-defendants in this case were not foreseeable to [Petitioner]." [CR Doc. 11 at 3: Objections to PSR]. Petitioner's counsel also filed a detailed sentencing memorandum, which included argument against the enhancement. [CR Doc. 16 at 10]. Petitioner's counsel argued that there was no evidence that Petitioner ever possessed a firearm as part of the conspiracy. Petitioner's counsel further argued

11

that there was no evidence that Petitioner knew or should have known that others involved in the conspiracy possessed a firearm as part of the conspiracy. [Id.].

Section 1B1.3 of the guidelines sets forth relevant conduct, which are factors that determine the guideline range. It provides, in pertinent part, as follows:

> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were –
>
> (i) within the scope of the jointly undertaken criminal activity,
>
> (ii) in furtherance of that criminal activity, and
>
> (iii) reasonably foreseeable in connection with that criminal activity;
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense….

U.S.S.G. § 1B1.3(a)(1)(B).

Here, Petitioner was charged with and pleaded guilty to drug trafficking conspiracy and money laundering conspiracy. The evidence shows that a firearm was recovered at the "stash house," a residence that was used by Petitioner's co-conspirator, Pedro Valle, to store the cocaine. The stash house was obtained at Petitioner's direction and Petitioner paid the rent for the house and paid Valle to watch the cocaine at the house. [CR Doc. 14 at 22]. The evidence also showed that firearms were recovered at the residences of Valle and another co-conspirator, Hever Garcia-Delgado. [Id.]. Based on this evidence, the law supports application of the enhancement. Namely, Petitioner paid rent for a stash house that he directed and paid Valle to watch over. Petitioner's claim that the possession of a firearm in furtherance of the drug trafficking conspiracy was not reasonably foreseeable to him is unsupported in law or reason. An enhancement under U.S.S.G.

§ 2D1.1(b)(1) is warranted "when the weapon at issue 'was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction,'" United States v. Manigan, 592 F.3d 621, 628-29 (4th Cir. 2010) (internal quotation marks omitted), even in absence of 'proof of precisely concurrent acts, for example, gun in hand while in the act of storing drugs, drugs in hand while in the act of retrieving a gun.'" United States v. Gomez-Jimenez, 546 Fed. Appx. 183, 185 (4th Cir. 2013) (quoting United States v. Harris, 128 F.3d 850, 852 (4th Cir. 1997)). "Rather, proof of constructive possession of the [firearm] is sufficient, and the Government is entitled to rely on circumstantial evidence to carry its burden." Id. (quoting Manigan, 592 F.3d at 629). Further, weapons possessed by co-conspirators are attributed to a defendant when "under the circumstances of the case, it was fair to say that it was reasonably foreseeable to defendant that his co-participant was in possession of a firearm." United States v. Kimberlin, 18 F.3d 1156, 1159-60 (4th Cir. 1994) (internal quotation marks and alteration omitted). "The defendant bears the burden to show that a connection between his possession of a firearm and his narcotics offense is 'clearly improbable.'" Gomez-Jimenez, 546 Fed. Appx. at 185 (quoting Harris, 128 F.3d at 852-53). The evidence supports a finding of reasonable foreseeability here. Even if Petitioner's counsel did, as alleged, withdraw Petitioner's objection to the firearm enhancement, Petitioner has not and cannot show that the connection between the firearms possessed by his co-conspirators, especially by Valle in protection of the stash house, and the drug trafficking conspiracy, were "clearly improbable."

Petitioner cannot, therefore, show prejudice because there is no reasonable probability that Petitioner would have received a lower sentence had his counsel not withdrawn the objection. See Royal 188 F.3d at 249.

As such, Petitioner's claim of ineffective assistance of counsel on this ground is denied.

### C. Sentencing Disparity

The Court turns to Petitioner's final claim of ineffective assistance of counsel, which is based on the failure to argue sentencing disparity at sentencing "after [counsel] filed a sentencing Memorandum saying he would argue on [Petitioner's] behalf." [CV Doc. 1 at 7]. Petitioner asks the Court "to consider a downward departure or a variance based on sentencing disparity." [Doc. 1-1 at 9]. Petitioner acknowledges that he raised the issue of sentence disparity on direct appeal and that his appeal was dismissed pursuant to the plea agreement appeal waiver. [Id.]. Petitioner presents evidence of similarly situated defendants subject to sentences of 189 months, 210 months, and 188 months, respectively. [Id. at 9-10]. Petitioner also notes that his co-defendant Pedro Valle received a 135-month sentence and that the "codefendant disparity average" sentence is 180.5 months. [Id. at 10]. Petitioner was sentenced to concurrent terms of 235 months on each count.

Section 3553(a) sets forth the factors to be considered by the Court in fashioning a sentence. These factors include consideration of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553 (a)(6). In the sentencing memorandum, Petitioner's counsel argued "[a] sentence in the correct guideline range of 135-168 months is consistent with the required consideration of 18 U.S.C. § 3553(a)(6) when viewed in light of Pedro Valle's sentence of 135 months." [Doc. 16 at 13]. Petitioner's counsel argued that "Pedro Valle and [Petitioner] held at best an equal footing in this conspiracy." [Id.]. Counsel concedes that he does not know whether Mr. Valle received the benefit of a U.S.S.G. § 5K1.1 motion by the Government. [Id. at 13-14].

Plaintiff's allegations on this issue are without merit. Any decision by Petitioner's counsel not to argue sentencing disparity at Petitioner's sentencing hearing fell within the range of reasonable professional assistance. Section 3553(a)(6) requires consideration of "unwarranted"

14

sentence disparities. Petitioner's counsel had achieved an agreement with the Government to forego certain enhancements and to reduce the guideline range from 324 to 405, as recommended in the PSR, to a guideline range of 235 to 293. Further, contrary to Petitioner's assertions, the evidence shows that Petitioner directed Valle's activities in the conspiracy. [See CR Doc. 14 at 43,45]. Additionally, other sentencing factors were at play in Mr. Valle's sentencing that resulted in a reduced sentence. Accordingly, any disparity in the sentences received by Petitioner and Valle were not unwarranted. Petitioner has not and cannot show that, absent the alleged ineffective assistance of counsel on this issue, his sentence would have been more lenient.

The Court, therefore, denies Petitioner's motion to vacate based on this ground.

In sum, this claim should be denied for Petitioner's failure to show that his counsel's performance was deficient or that Petitioner was prejudiced by counsel's conduct at sentencing. See Strickland, 466 U.S. at 687-88; Royal, 188 F.3d at 249.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 Motion to Vacate.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: May 7, 2020

Frank D. Whitney
Chief United States District Judge