UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:17-CR-00066-FDW-DSC-1

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| FLORENCIO APREZA-GUERRERO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant Florencio Apreza-Guerrero's pro se Motion for Compassionate Release. (Doc. No. 43.) This matter has been fully briefed, (Doc. Nos. 47, 51, 52), and is ripe for ruling. For reasons set forth below, Defendant's Motion is **DENIED**.

## I. BACKGROUND

In July 2016, a confidential source alerted agents that a Hispanic male—later identified as Defendant—was trafficking and distributing multiple kilograms of cocaine in the Western District of North Carolina. (Doc. No. 9.) The source indicated Defendant was not working alone. (Doc. No. 9, pp. 5–6.) Further investigations revealed Defendant and his co-conspirators were maintaining a stash house, selling cocaine, and depositing the proceeds into several different bank accounts. (Id. at 7.) On August 17, 2016, law enforcement officers executed five search warrants and arrested six co-conspirators, including Defendant. (Id.) At Defendant's apartment, law enforcement seized kilogram packaging, a money counter, and $80,300. (Id.) At Defendant's stash house, officers recovered 29.5 kilograms of cocaine, several kilogram wrappers, a handgun, ammunition, and $35,910. (Id. at 12.)

1

Following his arrest, Defendant admitted to receiving orders from Mexico and claimed he was instructed to (1) deliver cocaine to customers, (2) pick up the money proceeds, (3) meet the source of supply, and (4) pass bulk cash to other members of the drug trafficking organization. (Id.)

An indictment filed in March 2017 in the Western District of North Carolina charged Defendant with (1) conspiring to distribute or possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(C); and (2) conspiring to commit money laundering in violation of 18 U.S.C. § 1956. (Doc. No. 1.) Defendant entered into a plea agreement with the United States, pleading guilty to both counts. (Doc. No. 3.) The agreement included a recommendation that Defendant's sentences run concurrently as well as a mutual recognition that the amount of cocaine involved was between five and 150 kilograms. (Id.)

A presentence investigation report prepared by a U.S. Probation Officer calculated Defendant's total offense level as 41, which included enhancements for the known possession of firearms in furtherance of the conspiracy, the maintenance of a premises for the purpose of distributing a controlled substance, and the leadership role Defendant played in the conspiracy. (Doc. No. 9, pp. 13–14.) This Court sentenced Defendant to 235 months imprisonment, followed by five years of supervised release on Count One and three years of supervised release on Count Two. (Id.) Defendant appealed his judgment and the parties agreed to remand the case for resentencing because the United States erred in advising this Court that Count One mandated a supervised release term of at least five years. (Doc. Nos. 20, 28.) As a result, this Court resentenced Defendant to a three-year term of supervised release on Count One, with all other terms of the judgment remaining the same. (Doc. No. 47, p. 4.)

When Defendant filed the instant Motion, he was incarcerated at a federal correctional institution in Lompoc, California. In April 2021, Defendant was transferred to a correctional facility in Big Spring, Texas. (Doc. No. 52, p. 1.) Defendant is currently incarcerated at F.C.I. Fort Dix in New Jersey. Find an Inmate, Fed. Bureau of Prisons, https://ww.bop.gov/inmateloc/ (last visited June 18, 2024).

At the time of his motion, Defendant had served approximately four and a half years, which amounts to twenty-three percent of his twenty-year sentence. (Doc. No. 47, p. 5.) He is scheduled to be released in April 2032. Find an Inmate, Fed. Bureau of Prisons, https://ww.bop.gov/inmateloc/ (last visited June 18, 2024). While in custody, Defendant has recorded no disciplinary infractions and has participated in several educational and rehabilitation classes. (Doc. No. 47, p. 5.) Defendant is a Mexican national and was in the United States illegally at the time of his offense. (Doc. No. 9.) He will be subject to deportation upon his release. (Id.)

Defendant now asks this Court to reduce or otherwise modify his sentence. (Doc. No. 43, p. 12.) Defendant argues the risks presented by the COVID-19 pandemic, in conjunction with his health issues, constitute an "extraordinary and compelling reason" for a sentence reduction under 18 U.S.C. § 3582(C)(1)(A)(i). (Id. at 2.) Defendant further argues the statutory sentencing factors in § 3553(a) weigh in his favor, and his immediate deportation upon release proves he will not be a danger to society. (Id. at 5.)

## II. STANDARD OF REVIEW

Section 603(b) of The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to seek a modification of his sentence from the court for "extraordinary and compelling reasons" if the

defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before the First Step Act amended § 3582(c)(1)(A), a court could only act to reduce a defendant's sentence for extraordinary and compelling reasons if the BOP filed a motion seeking that relief.

If a defendant has administratively exhausted a claim for release (or the Government does not contest the exhaustion requirement),[1] the district court generally conducts a two-step inquiry when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A). United States v. Bond, 56 F.4th 381, 383 (4th Cir. 2023). First, the court determines whether the defendant is eligible for a sentence reduction. "A defendant is eligible if the court finds 'extraordinary and compelling reasons warrant such a reduction,'" (id.) (quoting § 3582(c)(1)(A)), and the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

"Second, the court considers 'the factors set forth in section 3553(a) to the extent that they are applicable.'" Bond, 56 F.4th at 384 (quoting 18 U.S.C. § 3582(c)(1)(A); citing United States v. Kibble, 992 F.3d 326, 331 (4th Cir. 2021)). Section 3553(a) requires the court to "impose a sentence sufficient, but not greater than necessary" to comply with the basic aims of the statute. In considering whether a reduced sentence is warranted given the applicable § 3553(a) factors, the court considers, among others, "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in

---

[1] United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021) (recognizing the exhaustion requirement in § 3582(c)(1)(A) is not jurisdictional, and it may be waived or forfeited).

the most effective manner;" the kinds of sentences available and sentencing ranges; and "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a). Notwithstanding the existence of "extraordinary and compelling reasons," the court retains the discretion to deny a defendant's motion after balancing the applicable 18 U.S.C. § 3553(a) factors. United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) ("If a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction.").

In 2023, the United States Sentencing Commission amended its policy statement to apply to defendant-filed motions for compassionate release, as permitted under the First Step Act of 2018, and expanded the list of circumstances sufficient to support such a motion under § 3582(c)(1)(A). See U.S. Sent'g Guidelines Manual § 1B1.13. The amendments became effective on November 1, 2023. (Id.) They supersede much of the case law that developed over the past several years while there was no policy statement applicable to defendant-filed motions. See United States v. McCoy, 981 F.3d 271, 283 (4th Cir. 2020). However, while drafting the new policy statement, the Sentencing Commission considered case law that developed after the enactment of the First Step Act in the absence of a binding policy statement. See U.S. Sent'g Guidelines Manual § 1B1.13 amend. 814 (Supp. to App. C 2023) (discussing Amendment 814 in light of the Supreme Court's decision in Concepcion v. United States, 142 S. Ct. 2389 (2022)). While Defendant filed his Motion before the amendment became effective, this Court will evaluate the Motion under the current policy statement.

Here, Defendant contends he has exhausted his administrative remedies. The Government does not contest this assertion. On June 17, 2020, Defendant requested the BOP file a motion for compassionate release on his behalf. (Doc. No. 43, p. 4.) By July 17, 2020, Defendant had

5

received no response. (Id.) Thus, the Court's analysis turns to whether Defendant's circumstances present extraordinary and compelling reasons supporting his release or sentence reduction, and whether such release or reduction is supported by the applicable § 3553(a) factors.

### III. ANALYSIS

Defendant argues the severity of his health conditions, when combined with the threats posed both personally and circumstantially by COVID-19, serve as "extraordinary and compelling reasons" supporting a release or a sentence reduction. (Doc. No. 43.) Moreover, Defendant contends his immediate deportation along with his minimal disciplinary infractions prove the applicable § 3553(a) factors weigh in favor of his request. For the following reasons, the Court disagrees.

**A. Defendant's Risk of Exposure and Severe Illness**

Defendant contends his numerous medical conditions, prior history of COVID-19, and likelihood of re-infection at his correctional facility, combine to sufficiently establish an "extraordinary and compelling reason" justifying either a sentence reduction or compassionate release. (Doc. No. 43.)

The 2023 policy statement contemplates "extraordinary and compelling reasons" may support a sentence reduction where there is an outbreak of infectious disease in a defendant's correctional facility. (Id.) In circumstances where an infectious disease is rampant, an "extraordinary and compelling reason" exists where (1) the defendant is housed at a correctional facility that is either affected or at imminent risk of being affected by an ongoing outbreak of infectious disease *or* a public health emergency; (2) the defendant, due to personal health risk factors and custodial status, is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak or public health emergency; and (3) the risk

cannot be adequately mitigated in a timely manner. U.S. Sent'g Guidelines § 1B1.13(b)(1)(D). The federal government officially ended the national state of emergency related to COVID-19 in May 2023. National Emergencies Act, Pub. L. No. 118-3, 137 Stat. 6 (2023). Therefore, Section 1B1.13(b)(1)(D) supports Defendant's argument only if he can show he is housed at a correctional facility "affected or at imminent risk of being affected by an ongoing outbreak of infectious disease" to which he is particularly susceptible. U.S. Sent'g Guidelines § 1B1.13(b)(1)(D)(i)(I).

"Recovery from a positive COVID-19 diagnosis, particularly where the inmate suffered only minor symptoms, is not enough to show that extraordinary and compelling circumstances warrant [his release]." United States v. Hartley, No. 5:13-CR-46, 2020 WL 4926146, at *3 (W.D.N.C. Aug. 21, 2020). In scenarios where a defendant has contracted, and beaten, the virus, the defendant bears the burden of proving his risk of re-infection is an extraordinary and compelling reason for a sentence reduction. United States v. Logan, No. 1:15-CR-27, 2020 WL 3960999, at *2 (W.D.N.C. July 13, 2020). Additionally, a previous diagnosis of COVID-19 does not establish a heightened or particularized susceptibility to re-infection or additional harm from the virus. United States v. Nabaya, No. 3:17-cr-3, 2021 WL 54361, at *5 (E.D. Va. Jan. 6, 2021). A court will consider whether a defendant was successfully treated by his or her facility when determining whether compassionate release is justified and considers whether such facility is well-suited to treat the defendant again upon re-infection. United States v. Ferguson, No. 5:15-CR-18, 2020 WL 5300874, at *5 (W.D.N.C. Sept. 4, 2020). Even lingering effects, such as persistent headaches, are not sufficient to establish an extraordinary or compelling reason. United States v. Lumpkin, No. 2:12-CR-192, 2020 WL 7123109, at *2 (E.D. Va. Dec. 4, 2020).

Here, Defendant tested positive for COVID-19 in May 2020 while incarcerated at F.C.I. Lompoc. (Doc. No. 43, p. 6.) Defendant alleges by July 2020, over ninety percent of his fellow inmates had tested positive for the virus. (Id.) Defendant contends he suffered headaches, night sweats, kidney pain, and a lost sense of smell and ability to taste, and characterizes his survival as miraculous. (Id. at 7.) But, as the United States correctly points out, Defendant's medical records do not indicate Defendant's symptoms were life-threatening. (Doc. No. 53.) In fact, during his bout with the virus, Defendant denied having a cough, muscle pain, shortness of breath, fatigue, or a sore throat. (Doc. No. 48, p. 38.) Moreover, in his motion, Defendant admitted his medical records do not suggest serious, life-threatening symptoms. (Doc. No. 43, p. 7.) Additionally, the United States correctly maintains evidence indicates not only that Defendant's symptoms were mild but also that such symptoms were successfully treated by the BOP. (Doc. No. 47, p. 11.) Within two weeks of his diagnosis, records penned the matter "resolved" and Defendant was testing negative for the virus. (Doc. No. 48, p. 49.) Despite this, Defendant contends the virus left him with lingering symptoms, and he asserts he continues to suffer from sudden vision shifts, headaches, PTSD, and a long-standing cough. (Id.)

Defendant further maintains he suffers from sickle cell anemia, alpha thalassemia, type 2 diabetes, gastro-esophageal reflux disease, tuberculosis, hyperlipidemia, iron deficiency, high cholesterol, high glucose, and elevated liver enzymes. (Doc. No. 43, p. 4.) However, Defendant's medical records continue to cast doubt on several of Defendant's claims. (Doc. No. 47, p. 11.) For example, a medical questionnaire from March 2021 revealed medical professionals checked "no" when asked if Defendant had sickle cell anemia. Additionally, on April 5, 2021, Defendant denied having the disease. (Doc. No. 53, pp. 16, 29.) Moreover, while medical records noted it

was "suspected" Defendant had alpha thalassemia, his diagnosis was never confirmed. (Doc. No. 53, p. 42.)

Despite Defendant's numerous cited conditions, the United States argues at the time Defendant's motion was filed, Defendant's type-2 diabetes was the only condition identified by the CDC as a risk factor for severe illness from COVID-19. (Doc. No. 47, p. 11.) As a result, the Government contends only Defendant's type-2 diabetes could establish the severity needed for an "extraordinary and compelling reason." (Id.) Defendant counters by arguing his diagnosed tuberculosis, a disease he claims is well-known for attacking the lungs, should be considered as a high-risk condition. (Doc. No. 51, p. 3.) However, the record shows Defendant's tuberculosis, while diagnosed, was not yet active and Defendant has received an adequate, preventative treatment. (Doc. No. 48, p. 35.)

Defendant next argues his circumstances further warrant release or a reduced sentence because his correctional facility has failed to combat the spread of the virus. (Doc. No. 43, p. 8.) Defendant argues the BOP's modified operations, in response to the outbreak, have instead diminished his ability to provide adequate self-care. (Id.) Defendant fears he will contract the virus for a second time, arguing "there is simply not enough experience with COVID-19 to say that defendant is safe from the potentially devastating effects of COVID-19; he may not be able to recover fully down the road, even if he purportedly has now." (Id.) In making this argument Defendant, perhaps reluctantly, concedes that he has fully recovered from his first bout with the virus. Moreover, Defendant's argument that the BOP's COVID-19 experience is minimal has only weakened over time as new treatments and scientific data have become widely available.

Even if Defendant's correctional facility and his cited medical conditions were as dangerous as he claims, Defendant's circumstances are different now. Since Defendant filed his

9

original motion, and the Government filed its initial response, Defendant has been transferred—twice—to a new correctional facility. (Doc. No. 52, p. 1.) In April 2021, Defendant was transferred to F.C.I. Big Spring in Texas. (Doc. No. 53, p. 25.) Prior to his transfer, Defendant tested negative for COVID-19 four times between February 12, 2021, and April 5, 2021. (Doc. No. 53, pp. 47, 49, 51, 53.) Additionally, BOP records now show Defendant is imprisoned at F.C.I. Fort Dix. Find an Inmate, Fed. Bureau of Prisons, https://ww.bop.gov/inmateloc/ (last visited June 18, 2024). Over sixty-five percent of inmates at F.C.I. Fort Dix are fully vaccinated against COVID-19, the facility has only recorded two COVID-19 related deaths, and currently reports only one active case of the virus. Inmate Covid-19 Data, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited June 24, 2024). Therefore, even if F.C.I. Lompoc was a high-risk facility when Defendant was housed there, Defendant's transfer to a new facility moots his argument.

Moreover, in a supplemental response filed nearly a month after Defendant's transfer to F.C.I. Big Spring, the Government argues F.C.I. Big Spring started administering COVID-19 vaccinations on April 27, 2021. (Doc. No. 52, p. 2.) While Defendant's medical records do not indicate he has received the vaccine, it is likely Defendant will soon be given the opportunity to receive it, if such an opportunity has not been offered to him already. Further, the Government correctly maintains the access to vaccination is of great relevance when determining whether a compassionate release or a reduced sentenced is justified. (Id.) See also United States v. Leach, 3:14-cr-229 2021 WL 1318318, at *3 (W.D.N.C. Apr. 8, 2021) (denying motion for compassionate release where prisoner had diabetes, but would likely soon be vaccinated against COVID-19, and the § 3553(a) factors did not warrant relief). If Defendant was not vaccinated at

F.C.I. Big Spring, it is likely he will once again be presented with the opportunity at F.C.I. Fort Dix.

In sum, Defendant has only successfully proven that he (1) contracted the virus, (2) recovered from the virus, and (3) possibly might catch the virus again. Additionally, Defendant's newest facility, which has only one active case of COVID-19 and offers vaccinations, provides Defendant with the opportunity for the adequate self-care he seeks. Therefore, when considering Defendant's history of COVID-19, his cited medical conditions, and his potential for re-infection, this Court finds Defendant failed to meet the three requirements detailed in Section 1B1.13(b)(1)(D), and consequently, failed to establish an "extraordinary and compelling reason" justifying release.

**B. § 3553(a) Factors**

Defendant further contends compassionate release is warranted because the applicable factors listed in 18 U.S.C. § 3553(a)(2)(A) support his release. This Court disagrees and concludes even if Defendant's circumstances could be determined "extraordinary and compelling", the applicable § 3553(a) factors weigh heavily against him.

First, with respect to the "nature and circumstances of the offense" and "the history and characteristics of the defendant," Defendant notes he is a first-time offender. Defendant also contends his custodial disciplinary record is clean, and he has participated in numerous educational and rehabilitation classes. (Doc. No. 43, p. 11.) Next, Defendant cites the need "to provide just punishment for the offense." Defendant argues his punishment is unjust simply because "[j]ust punishment does not contemplate exposure to a life-threatening illness." (Id.) Lastly, Defendant argues he poses no threats to the community because, therefore further

11

incarceration is not necessary to protect the public, because upon his release he will immediately be deported to Mexico. (Doc. No. 43, p. 4.)

Defendant was a leader in a highly organized, international cocaine trafficking ring. Moreover, Defendant's conspiracy involved thousands of dollars, the possession of firearms and ammunition, and the maintenance of a stash house used in furtherance of the conspiracy. (Doc. No. 9, p. 13.) While Defendant's clean disciplinary record and lack of a criminal history are certainly commendable, it does not retract from the seriousness of Defendant's underlying offense. Further, Defendant's argument offering his deportation as evidence for the public's safety raises several concerns. First, Defendant's drug trafficking orders were received from Mexico. (Id. at 16.) Second, Defendant would be free of any supervision in Mexico, and could freely interact with the dispatcher of those orders. (Id.) Third, Defendant has not shown any evidence, aside from his lack of a criminal history and his clean disciplinary record to prove he would not be a danger to the community. United States v. Soto, No. 3:24-CR-179, 2020 WL 5913989, at *1–2 (W.D.N.C. Oct. 6, 2020) (finding drug-trafficking defendant who had a detainer had not shown he would not endanger the safety of others and the community if the Court reduced his sentence).

Therefore, even if Defendant's circumstances could be coined as "extraordinary and compelling", which this Court believes they cannot, compassionate release is still not warranted because Defendant cannot demonstrate the § 3553(a) factors merit his release.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 43), is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Shorten Briefing Schedule, (Doc. No. 46), and Defendant's Motion for Extension of Time to File Response/Reply, (Doc. No. 50), are **DENIED** as **MOOT**.

**IT IS SO ORDERED.**

Signed: June 24, 2024

Frank D. Whitney
United States District Judge